## J. W. WRIGHT *v.* JACKSON CONSTRUCTION Co. *et al.*

### (*Jackson.* April Term, 1917.)·

1. NEW TRIAL. Order granting. Void character. Statute.

Under Thompson-Shannon's Code, section 6282, providing that either party to a suit in chancery is entitled to a jury to try any material fact in dispute, and that all the issues of fact in any case shall be submitted to one jury, where the chancellor permitted certain issues with responses thereto by the jury to stand, overruling the motion for new trial as to them, but sustained the motion and awarded new trial as to certain other issues, the granting of new trial as to some of the issues without granting it as to all was void. (*Post, pp.* 148, 149.)

Code cited and construed:  Secs. 6282 (Thomp.-Shan.).

2. EQUITY. Jury in chancery. Determinative issues.

Only determinative issues can be presented to a jury in chancery, that is, issues determinative of the entire case or of some distinct or separable part or branch of the case. (*Post, pp.* 149-152.)

Acts cited and construed:  Acts 1909; ch. 479, sec. 4.

Cases cited and approved:  Crisman v. McMurray, 107 Tenn., 469; Connor v. Frierson, 98 Tenn., 183; McElya v. Hill, 105 Tenn., 319; Madison Trust Co. v. Stahlman, 134 Tenn., 402; Continental Nat. Bank v. First Nat. Bank, 108 Tenn., 374-376; Gass v. Mason, 36 Tenn., 509; Minton v. Wilkerson, 133 Tenn., 484-487;  Perkins v. Brown, 132 Tenn., 294.

Code cited and construed:  Sec. 6282 (S.).

3. EQUITY. Jury Issues. Verdict on undeterminative.issues.

All other than determinative issues of fact are immaterial, and a new trial in respect thereof cannot be lawfully ordered, and, if ordered, is of no legal import, so that if there is but one determinative issue, the submission of others is immaterial, and the verdict on the material issue will be decisive of the case, and the undeterminative issues should be treated as not submitted at all. (*Post, pp.* 149-152.)

138 Tenn.—10

4. **CONSTITUTIONAL LAW.  Licenses.   Privilege tax for doing business.  Statute.**

Under Acts 1909, chapter 479, section 4, providing that each foreign construction company with its chief office outside of the State, operating and doing business in the State, directly or by agent, or by subletting contracts, shall each pay per annum in each county as a privilege tax for doing business $100, and that each domestic construction company and each foreign construction company having its chief office in the State doing business in the State shall each pay per annum in each county $25, any citizen of the State as well as any citizen of a foreign State who has his chief office out of the State must pay the $100 tax, so of any domestic corporation or foreign corporation having its chief office out of the State, while any foreign corporation, citizen of another State, or firm, as well as domestic corporations, citizens of the State, or firms of the State having chief office in the State, are all entitled to carry on a construction business in the State on payment of $25, so that act is not violative of Constitution U. S. article 4, section 2, subsec. 1, and the Fourteenth Amendment as a discrimination against citizens of other States.  (*Post, pp.* 152, 153.)

Constitution cited and construed:  Const., Art. 4, sec. 2.

5. **LICENSES.  Privilege tax.  Payment after exercise but before suit brought.  Statute.**

Where a citizen of Alabama, with his chief office in that State, did railroad construction work in Tennessee, and, after the work was performed, and before he brought suit on his contract, he paid an amount of money purporting to cover his privilege tax for doing business required by Acts 1909, chapter 479, section 4, even if he had paid the proper amount, the payment was too late since payment of a privilege tax and procurement of a license after the privilege has been exercised, though before suit brought, will not give the party so paying any right to maintain suit.  (*Post, p.* 153.)

Cases cited and approved:  Saule v. Ryan, 53 S. W., 977; Stevenson v. Ewing, 87 Tenn., 46; Pile v. Carpenter, 118 Tenn., 288.

Wright v. Jackson Const. Co.

6. **LICENSES.**   **Privilege tax.**   **Right of unauthorized contractor to sue.**

. The contractor to build a railroad, having acted in violation of a statute, in undertaking and transacting the business without paying a privilege tax to the State, cannot recover on the contract. (*Post, p.* 153.)

FROM MADISON.

Appeal from the Chancery Court of Madison county.—J. W. Ross, Chancellor.

BOND & BOND, C. E. PIGFORD and W. N. KEY, for complainant.

McCORY & SNEED, W. H. BIGGS, R. F. SPRAGINS and W. G. TIMBERLAKE, for defendants.

⎯ . MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Defendants contend that the finding on issue No. 2 settles the whole controversy against the complainant. Standing alone, or considered apart from other matters, it necessarily does, because in response to that issue the jury found there was nothing due the complainant on the contract on which he sued. But there were other issues, with the responses of the jury thereto, some of which were set aside by the chancellor, on motion for new trial by the parties.

Among these was issue No. 4, which presented the inquiry whether there was anything due the complainant on a *quantum meruit* for services performed or materials furnished, he having alleged such a ground of action in his original bill, in the alternative, in case he could not succeed in his action on the contract. In response to this issue the jury found the defendant Jackson Construction Company indebted to the complainant in the sum of $9, 403.80, and, nothing further appearing, complainant is entitled to a judgment for this sum, and the jury having further found that due notice was given, he would apparently be entitled to a lien on the line of railroad; but the question of the lien is not decided authoritatively, such decision being at this time unnecessary, as will presently appear.·

It is rightly objected, as we think, that, under section 6282 of Thompson's-Shannon's Code, all of the issues must be tried in chancery by the same jury. Now in this case the chancellor permitted certain issues with the responses thereto by the jury, among other issues, No. 2, to stand, overruling the motion for new trial as to them, but he sustained the motion and awarded a new trial as to certain other issues. Ought we to hold that the order granting a new trial as to some of the issues while refusing it as to others, resulted in granting a new trial, automatically, as to all, or that the granting of a new trial as to any of them without granting it as to all

was simply void? In our judgment the latter is the correct view. On such action being taken by the chancellor the respective parties should have prepared and filed a bill of exceptions for use on appeal after the final trial at which the chancellor would again attempt to hear the case on the matters as to which he granted a new trial. But it seems this was not done because of the very great expense that would have been thereby incurred.

It seems from the record that the chancellor did enter upon another trial, first framing therefor three issues which he thought covered the matter embraced in No. 4, in respect of the *quantum meruit;* that he caused a jury to be impaneled; that the complainant refused to introduce any evidence on these issues because the chancellor would not submit all of the issues which the complainant offered on the first or original trial of the case, and that the chancellor thereupon directed the jury to return a verdict for the defendants, which was accordingly done, and that he entered a decree, final, dismissing the bill. An appeal was then prosecuted to this court. The vital mistake was committed when the chancellor awarded a new trial on only a part of the issues.

Further on this point: The law is that only determinative issues can be presented; that is, determinative of the whole case or of some distinct or separable part or branch of the case. *Crisman* v. *McMurray,* 107 Tenn., 469, 64 S. W., 711; *Connor* v. *Frierson,*

98 Tenn., 183, 38 S. W., 1031; *McElya* v. *Hill,* 105 Tenn., 319, 59 S. W., 1025. The case of *Madison Trust Co.* v. *Stahlman,* 134 Tenn., 402, 183 S. W., 1012, as to what it says upon the subject of proper jury issues in chancery is confined to its facts. All other than determinative issues are immaterial, and a new trial in respect thereof could not be lawfully ordered, and if ordered would be of no legal import. Naught added to naught is still but naught. So, if there be but one determinative issue in the case, the submission of others is immaterial; all that can be looked to is the verdict of the jury on the material issue. *Continental Nat. Bank* v. *First Nat. Bank,* 108 Tenn., 374-376, 68 S. W., 497. That will be decisive of the case, no matter how many immaterial issues are submitted to or decided by the jury. They should be treated as not submitted at all. *Gass* v. *Mason,* 4 Sneed, 509; *Minton* v. *Wilkerson,* 133 Tenn., 484-487. 182 S. W., 238.

The rule that if there be a new trial granted by the chancellor as to one of the material determinative issues he must grant it as to the others, or as to all, will no doubt produce inconvenience, in some instances, but it is, as we think, a necessary deduction from the statutory provision that "all the issues of fact in any case shall be submitted to one jury." Thompson's-Shannon's Code, section 6282, supra. It is apparent, too, that in the absence of such a provision jury trials in chancery might be practical-

ly interminable. It may be that this court, in the exercise of its appellate jurisdiction, when we can clearly see that a due administration of justice requires it, as was done in a recent law case (*Perkins* v. *Brown,* 132 Tenn., 294, 177 S. W., 1158, L. R. A., 1915F, 723, Ann. Cas., 1917A., 124), can approve the verdict on one issue, and so remove it from the field of controversy, and remand for a new trial on the other, or others, in a chancery cause; but such a case is not before us, at this time, and we do not now decide it.

The question remains whether the complainant is entitled to judgment on the amount found for him under issue No. 4— $9,403.80. The solution of this question depends on the construction of section 4 of chapter 479, Acts 1909. That section so far as necessary to quote here, reads:

"Sec. 4. Be it further enacted, that each vocation, occupation, and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation on such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court clerk as provided by law for the collection of revenue. . . .

"Each foreign construction company, with its chief office outside of this State, operating or doing business in this State, directly or by agent, or by any subletting contract, each, per annum, in each county ................................................ $100.00.

"Each domestic construction company and each foreign construction company, having its chief office in this State, doing business in this State, each, per annum, in each county......................$25.00.

"The above tax shall be paid by persons, firms, or corporations engaged in the business of constructing bridges, waterworks, railroads, street paving construction work, or other structures of a public nature."

Section 16 of the same act reads:

"Be it further enacted, that it is hereby declared a misdemeanor for. exercising any of the foregoing privileges without first paying the taxes prescribed for the exercise of the same, and all parties so offending shall be liable to a fine of not less than $10.00 nor more than $50.00 for each day such privilege is exercised without license; but this inhibition shall not apply to any person, firm, or corporation engaged in interstate commerce."

Complainant insists that section 4 discriminates between citizens of Tennessee and those of other States requiring the latter to pay a tax of $100 for the privilege of doing railroad construction business here, while citizens of this State are required to pay only $25, hence that the section is in conflict with article 4 section 2, subsubsection 1, of the federal Constitution, and also with the Fourteenth Amendment to the same instrument. In our judgment the construction suggested is not a sound one. The de-

termining feature in the legislation quoted is the having of one's chief office in this State. Any citizen of this State, as well as any citizen of a foreign State, who has his chief office out of the State, must pay the $100 tax; so of any domestic corporation, as well as foreign corporation, having its chief office out of the State. Any foreign corporation or citizen of another State, or firm, as well as domestic corporations, citizens of this State, and firms of this State having its or their chief office in this State, are all alike entitled to carry on a railroad construction business here on the payment of $25. There is no discrimination at all.

It is not denied that complainant failed to pay the tax before he did the work. After the work was performed and before suit brought he paid the $25 tax. This was too late, even if he had paid the $100. the tax applicable to his situation, he being a citizen of Alabama with his chief office there. It was too late because payment of a privilege tax and procurement of a license after the privilege has been exercised, though before suit brought, will not give the party so paying any right to maintain suit. *Saule* v. *Ryan,* 53 S. W., 977. The complainant having acted in violation of a statute in undertaking and transacting the business cannot recover. *Stevenson* v. *Ewing* 3 Pick. (87 Tenn.), 46, 9 S. W., 230; *Pile* v. *Carpenter,* 118 Tenn., 288, 99 S. W., 360.

The result is the decree of the chancellor dismissing the bill must be affirmed, with costs.