MUTUAL LIFE INS. CO. OF NEW YORK *v.* BURTON.

(*Jackson,* April Term, 1934.)

Opinion filed June 23, 1934.

McCormick & Graves, of Memphis, for appellant.

Fitzhugh, Murrah & Fitzhugh, of Memphis, for appellee.

Mr. Justice Swiggart delivered the opinion of the Court.

By its original bill in the chancery court of Shelby county the Mutual Life Insurance Company sought to rescind and cancel a contract of life insurance for misrepresentations and fraud in its procurement. The defendant, Mrs. Annie J. Burton, named beneficiary, filed her cross-bill, seeking a decree for the amount of the insurance, and demanded a jury to try the issues of fact.

Responding to the issues submitted, the jury found that the insured, Edward W. Burton, was in good health at the time he applied for the insurance and at the time the contract was delivered to him.

Issue No. 7 was as follows: "Did Edward W. Burton state, in answer to question 17 in his application, every physician and practitioner consulted during the period of five years preceding the application, and the dates of consultation?"

With respect to this issue the chancellor sustained the complainant's motion for a directed verdict, and instructed the jury to answer in the negative.

At the conclusion of the trial, and after the jury's verdict had been rendered, the chancellor sustained complainant's motion for a new trial and granted a new trial. Thereafter, and in the same minute entry, the chancellor decreed as follows:

"And thereupon the case came on further to be heard on motion of complainant, Mutual Life Insurance Company of New York, for a decree on the undisputed evidence and on the holding and direction of the Court as to issue No. 7 and the finding thereon and the Court being of the opinion that Edward W. Burton, applicant for the insurance policy, made false representations in answer to questions Nos. 17 and 19 in the application, that said misrepresentations related to material matters, and such misrepresentations constituted valid and sufficient grounds for cancellation of the policy as prayed for in the original bill, it is accordingly ordered, adjudged and decreed by the court that said motion for a decree in favor of the complainant be and the same is hereby sustained."

The defendant and cross-complainant moved for a decree in her favor, on the verdict of the jury, which was denied. She thereupon appealed to the Court of Appeals. That court overruled a motion to dismiss her appeal, because she had made no motion for a new trial with respect to issue No. 7. The Court of Appeals ruled that the action of the chancellor in granting a new trial as to the other issues, without including the verdict on issue No. 7, was void, under the rule stated in *Wright* v. *Jackson Const. Co.*, 138 Tenn., 145, 196 S. W., 488, and that cross-complainant was entitled to prosecute her appeal, without having made a motion for a new trial, to test the ruling of the chancellor that issue No. 7 was a determinative issue. The court then held that issue No. 7 was a determinative issue, and that the action of the chancellor in directing a negative verdict imports a conclusion by him that "the consultations had by the insured were of such a nature as would render false his answer to the questions in the application with respect thereto, when those questions are given the meaning ascribed to them in this state by judicial construction." The court then declined to examine the evidence, preserved by bill of exceptions, to determine the nature or materiality of the consultations not disclosed by the insured, because cross-complainant had not made motion for a new trial. The decree of the chancellor was accordingly affirmed.

We have found no case wherein the effect to be given a directed verdict in a chancery court has been considered by this court.

While the practice of trial by jury has been established in the chancery court by statute, which prescribes that the findings of the jury shall have the same

force and effect as at law (Code, sec. 10579), the nature of a jury verdict in the chancery court is quite different from that of a verdict in a law court. This difference is clearly stated in *Cooper & Stockell* v. *Stockard,* 16 Lea (84 Tenn.), 140, 144, from which we quote: "The issues are made up under the directions of the court, and must set out the questions to be tried. In practice, these questions are literally questions propounded to the jury, which, in their verdict, they are required to answer affirmatively or negatively. They return no verdict in favor of the plaintiff for the money or thing sued for; but say such and such allegations or propositions are true or false. Then the chancellor, if he allows the verdict to stand, considers the facts found as true, and tries and determines the rights of the parties as he deems just and right, in view of the facts found. In other words, the jury report their opinion upon the questions submitted to them, and the chancellor tries and determines the suit between the parties upon the facts reported, and other facts before them, and the law governing the case."

In *De Rossett Hat Co.* v. *Fire Ins. Co.,* 134 Tenn., 199, 207, 208, 183 S. W., 720, 722, the court said: "Where no material fact is in dispute, the right to a jury trial under that section does not exist, and when a court, in a cause where a jury trial has been applied for under that section and granted, submits to the jury an issue of fact not in dispute, it abdicates its own duty to adjudicate between the parties in respect of that undisputed fact, and when it thus surrenders its functions to the jury it goes beyond the law and is in error."

The preparation of issues of fact for submission to a jury is usually done prior to the examination of wit-

nesses. In this way the materiality of evidence when offered is made apparent. But the issues are submitted to the jury at the close of the evidence, and, if the evidence has developed no dispute or controversy of fact, the matters to be determined are questions of law and not issues of fact. There is then nothing to be submitted to a jury, and under such circumstances we understand the practice to be that the chancellor discharges the jury, with an expression of thanks for their patience and a direction that they claim their fees in the clerk's office.

The practice of directing verdicts in the law courts was first held to conform to our constitutional restriction of the power of a judge to instruct a jury with respect to questions of fact, in the cases of *Greenlaw* v. *Railroad,* 114 Tenn., 187, 86 S. W., 1072, and *Tyrus* v. *Railroad,* 114 Tenn., 579, 86 S. W., 1074, 1077. The principle involved in the practice is thus stated in the latter case: "Where there is no controversy as to any material fact, there is nothing for the jury to find; the question is then solely one of law for the court, and in such a case the court may instruct the jury to return a verdict in accordance with his view of the law applicable to such ascertained or uncontroverted facts."

From this statement it is seen that, in directing a verdict in a court of law, the judge finds the facts himself, and instructs the jury to return their verdict in favor of that party whose position is sustained by the facts so found. The jury finds neither the facts nor the law, but takes both from the judge who instructs them. Motion for a new trial by the losing party is essential to review of such a verdict by an appellate court, not because of the interposition of a jury, but because the review is by ap-

peal in the nature of a writ of error, and not by appeal as in courts of chancery. *Railroad* v. *Johnson,* 114 Tenn., 632, 88 S. W., 169; *Weakley County Road Commissioners* v. *Railroad,* 123 Tenn., 257, 130 S. W., 768; *Bostick* v. *Thomas,* 137 Tenn., 99, 191 S. W., 968.

Since the verdict of a jury in the chancery court has no further effect than as a finding of disputed or controverted facts, and the action of a judge or chancellor in directing a verdict is itself a finding of the material facts from uncontroverted evidence, it necessarily follows that the directed verdict has no place in chancery practice. There is no function it can serve. Whether requested so to do or not, it is the duty of the chancellor to withdraw, or decline to submit to the jury, an issue or "question" calling for a finding of fact as to which there is in the evidence no dispute or controversy. This is held in the ruling hereinabove quoted from *De Rossett Hat Co.* v. *Fire Ins. Co.,* 134 Tenn., 199, 207, 183 S. W., 720.

The opinion filed by the Court of Appeals indicated that that court would have reached the conclusion we have reached, but felt bound otherwise by expressions in some of our opinions. But, as stated, we find no ruling of the point in our reported cases.

In *National Life & Accident Ins. Co.* v. *American Trust Co.,* 68 S. W. (2d), 971, the Court of Appeals for the Middle Division of the state ruled that the chancellor erred in overruling the defendant's motion for a directed verdict on a determinative issue, and dismissed the suit. The writ of *certiorari* was denied by this court. The result was the same in that case as if the Court of Appeals had merely found, in accord with the practice herein approved, that there was no evidence to support the verdict,

and had then proceeded to decide the determinative question of law on the undisputed facts found by that court, as in reality it did do. Of course, in that case, since there was a verdict of a jury on the issues, not directed by the chancellor, a motion for a new trial was required to enable the Court of Appeals to review the evidence.

In the case before us, when the chancellor determined that complainant's motion for a directed verdict should be granted, he necessarily found that the evidence relating to the question of fact stated in the issue was undisputed and uncontroverted. Having so found, his action in instructing the jury to return a negative verdict was literally, as well as in effect, to withdraw that issue from the jury. The verdict, returned as instructed, was superfluous and nugatory. The subsequent decree, sustaining the bill, was rendered upon facts found by the chancellor, as well as upon legal conclusions drawn by him from such facts.

In *Carpenter* v. *Wright,* 158 Tenn., 289, 13 S. W. (2d), 51, followed in *Hibernia Bank & Trust Co.* v. *Boyd,* 164 Tenn., 376, 48 S. W. (2d), 1084, it was recognized that, although there is a jury trial as to some issues, those issues of fact as to which there is no finding of a jury are triable, on appeal in an equity case, *de novo* and without the necessity of a motion for a new trial.

Complainant contends further that the practice in this regard was changed by Pub. Acts 1929, chap. 94 (Code 1932, sec. 10622), regulating the review of cases by the Court of Appeals; and that a motion for a new trial was necessary to a review of the chancellor's findings and conclusion.

The applicable language of the act of 1929 is: "The

transcript before the Court of Appeals in cases tried in any lower court upon oral testimony must contain motion for new trial and bill of exceptions." Section 1.

In *Fonville* v. *Gregory,* 162 Tenn., 294, 36 S. W. (2d), 900, we construed this language as merely declaratory of the practice theretofore followed, and not alterative. It was there ruled that the act of 1929 did not require a motion for a new trial in equity cases tried according to the forms of the chancery court.

The language quoted above from the act of 1929 was carried into section 10622 of the Code of 1932 without change, and we are persuaded that the construction heretofore given it should be adhered to. See *Miller* v. *Kennedy,* 164 Tenn., 470, 51 S. W. (2d), 1000.

Complainant cites *Brockman* v. *Rodgers,* 16 Tenn. App., 542, 65 S. W. (2d), 245, in which we denied *certiorari* to the Court of Appeals, as a contrary ruling. The review sought in that case was of a judgment of a law court reducing an award of alimony previously made as incidental to a judgment of divorce. While the original divorce action was tried as a proceeding in equity, to the review of which a motion for a new trial was not required, if tried without a jury [*Broch* v. *Broch,* 164 Tenn., 219, 47 S. W. (2d), 84], the subsequent proceeding for a reduction of the alimony award was strictly a proceeding at law, and the review was by appeal in the nature of a writ of error.

■ ■ The cross-complainant was therefore entitled, on her appeal to the Court of Appeals, to a hearing *de novo* on the issues found by the chancellor to be destructive of her rights under the contract of insurance in suit. No controverted questions of fact being involved, we

deem it proper to here review the decree of the chancellor, without remanding the case to the Court of Appeals.

Questions 17 and 19 of the application for insurance, answered by the insured and referred to by the chancellor in his decree hereinabove quoted, are as follows:

"17. State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years for any ailment, serious or not serious."

"19. Have you stated in answer to question 17 every physician and practitioner consulted during the five years and dates of consultations?"

Answering question 17, the insured gave the names of Drs. Holder and Anthony. To question 19, he answered "Yes."

The evidence, to which the chancellor referred as constituting these answers a false representation of matters material to the insurance risk, consists of the testimony of Dr. J. A. James that in October, 1931, he gave the insured a physical examination and pronounced him physically sound, and that on two other occasions the insured came to him and received an administration of a prophylactic designed and intended as a preventive of venereal infection. One of these administrations was in April, 1931. The date of the other is not shown with certainty, but it was before the application for the insurance was made, on November 30, 1931. Dr. James testified that he discovered no evidence of venereal infection in the insured prior to the date of the application.

Whether the failure of the insured to disclose these visits to Dr. James rendered his answers to questions 17

and 19 of the application false must primarily depend upon the meaning and import of the questions themselves.

Question 17 called for a disclosure of the name of any physician or practitioner who had "prescribed for or treated" the insured, or whom he had consulted for any "ailment." An ailment is defined in the Standard Dictionary as an indisposition of the body or mind, a slight illness. This is its common meaning. So also the idea of prescription or treatment by a physician imports that the patient or consultant is either suffering from an ailment or believes himself to be so afflicted.

It seems to us that a physical examination by a physician, which reveals the total absence of ailment in the subject, and the absence of any condition for which prescription or treatment is required or indicated, is wholly and altogether foreign to the concept of a treatment or consultation for an ailment, and that the question 17 did not call for the disclosure of such an examination.

We think also that the language of question 17 altogether fails to convey the idea that it required a disclosure of the administration of a preventive prophylactic, unaccompanied by any evidence or belief by the applicant that he was in fact suffering from an infection. As stated above, the idea of a physician's treatment or prescription is associated in ordinary parlance with a pathological condition or ailment which the prescription or treatment is designed to cure or relieve. This, therefore, was the meaning which we must assume was conveyed to the applicant by the question, and his failure to disclose the administrations of the prophylactic did not render his answer false.

Question 19 called for nothing more than an express

618

statement by the applicant that he had given a true answer to question 17. The consultation referred to there is the consultation "for any ailment," called for in question 17. And since, in our opinion, the applicant gave a correct answer to question 17, it follows that he correctly answered question 19.

We conclude, therefore, that the chancellor erred in his finding that the answers given by the insured to questions 17 and 19 of the application were false and that they constituted a false representation material to the risk of the insurance contract. His decree, and that of the Court of Appeals, must therefore be reversed.

 The cross-complainant has renewed in this court, by assignment of error, her motion that she be given a decree on the verdict rendered by the jury. This we cannot do, for the reason that the chancellor not only did not approve the verdict on the material issues as to the condition of the insured's health at the date of the delivery of the contract and the truth of his representations with regard thereto, but expressly set aside the verdict and granted complainant a new trial. This action by the chancellor appears on the minute record as having been done prior to, and independently of, his ruling on issue No. 7.

 From our ruling that the action of the chancellor on complainant's motion for a directed verdict was a withdrawal of issue No. 7 from the jury, it follows that the granting of a new trial as to all other issues left no part of the jury's verdict in effect. Therefore the setting aside of the verdict on complainant's motion was not void, under the ruling in *Wright* v. *Jackson Const. Co.*, 138 Tenn., 145, 196 S. W., 488.

 Cross-complainant cites *Mackie* v. *Fuqua*, 14

Tenn. App., 176, in support of her contention, but we find that case an authority to the contrary. Responding to petition to rehear, the Court of Appeals said: ''The verdict of a jury is not final until it is approved by the trial judge. . . . We have no power to enter a judgment on the verdict of the jury without the assent of the trial judge.'' Our cases are numerous in support of that holding.

The decree of this court will therefore reverse the decree of the Court of Appeals, and remand the case to the chancery court for a new trial on the issues made by the pleadings. Costs of the appeal and of this court will be adjudged against complainant, Mutual Life Insurance Company of New York.