# THIRD NAT. BANK v. AMERICAN EQUITABLE INS. CO. OF NEW YORK et al.—178 S. W. (2d) 915.

Middle Section. July 10, 1943.

Petition for Certiorari denied by Supreme Court, November 20, 1943.

Jordan Stokes, Jr., J. G. Lackey, and James W. Stokes, all of Nashville, for Third Natl. Bank, executor.

Keeble & Keeble, of Nashville, for American Equitable Ins. Co. of New York and Sussex Fire Ins. Co. of Newark, N. J.

FELTS, J. The Third National Bank, executor of Jordan Stokes, deceased, brought this suit on two fire insurance policies to recover for partial loss by fire of a house at 1713 West End Avenue, Nashville, the former residence of Mr. Stokes.

Both the policies were issued to him by defendant Sussex Fire Insurance Company of Newark, New Jersey, one of them being for $3,500 and the other for $4,000. Defendant American Equitable Insurance Company of New York also assumed the obligation of the policies. Mr. Stokes died October 13, 1938, and his executor, the complainant, had charge of the property when the fire occurred March 18, 1940.

The parties disagreed as to the amount of the loss, complainant's estimate being $8,344.13 and defendants' estimate $2,606.88. Complainant made proof of loss in the sum of its estimate, and defendants objected to it on the ground that it was excessive and on other grounds. They demanded an appraisal, and the appraisers likewise disagreed, the one appointed by complainant appraising the loss at $8,150.63 and the one appointed by defendants and the umpire appraising it at $5,802.32.

On March 17, 1941, complainant filed the bill attacking the award upon numerous grounds, one of them being that defendant's adjuster had intermeddled with the appraisers. The bill charged that defendants had acted in bad faith in refusing to adjust and pay the loss; and a recovery was sought for the full amount of the policies, interest, and the statutory penalty.

In their answer defendants did not rely on the award or insist that it was valid, but stated that they had tried in good faith to adjust the loss and were ready and willing to pay whatever amount the court should find to be the loss. They denied that they had been guilty of bad faith

and that complainant was entitled to interest or the penalty.

Chancellor Wade set aside the award. The cause was tried twice below; the first trial was before Chancellor Wade and a jury. The jury reported the amount of the loss to be $7,000. Upon defendants' motion for a new trial, Chancellor Wade suggested a remittitur of $750. Complainant refused to accept the remittitur and the chancellor granted a new trial. The second trial was before Chancellor Shriver and a jury. He submitted to the jury this issue: "What was the amount of all the direct loss or damage caused by the fire in question to complainant's property located at 1713 West End Avenue, City of Nashville, said property consisting of a two-story brick dwelling house." The jury answered "$6,988.00." Upon the verdict he entered a decree in favor of complainant for $6,988, with interest from March 17, 1941, $485.61, aggregating $7,473.61 and the costs.

Both parties moved for a new trial, which motions were overruled; and both appealed in error. All matters complained of relate alone to the second trial, no question having been saved upon the first trial. We first consider the questions made by defendants' assignments of error.

Defendants insist that the chancellor erred in submitting only the one issue above quoted and in declining to submit to the jury these five issues:

"1. What would have been the cost of replacement or repair using materials of like kind and character?

"2. What was the amount of the depreciation from any cause?

"3. What was the market value of the property before the fire?

"4. What was the market value of the property after the fire?

"5. What was the actual cash value of complainant's loss after deductions for depreciation however caused?"

As stated, defendants' answer admitted liability, and disputed merely the amount claimed by the bill. Apart from the questions of interest and penalty, the only issue upon the pleadings was the amount of the loss.

Defendants, however, contend that under the policy provisions this issue should have been split up into the five issues tendered by defendants, and that each of such issues should have been submitted by the chancellor to the jury.

Only one of the policies is in the record, the other having been mislaid; but it is stipulated that both were the same except the amounts and dates. In the one before us the company insured Jordan Stokes, Sr., for three years (May 3, 1937, to May 3, 1940) "against all direct loss or damage by fire or lightning, except as hereinafter provided, to an amount not exceeding" $3,500, to the house; and it contained the standard form, the part of it relied on by defendants being as follows: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality . . . ."

And the company had the option "to repair, rebuild, or replace the property lost or damaged with other of like kind and quality."

These provisions related to details for arriving at the amount of the loss. They limited liability to the actual cash value of the property; provided the loss should be estimated according to such value, with proper deduction

for depreciation, and should not exceed the cost of repair or replacement; and gave the company the option to repair or replace the property in kind. Thus "actual cash value," "depreciation," and cost of repair or replacement were factors in ascertaining the amount of the loss; but they were only parts of that issue. The chancellor instructed the jury to consider these matters in solving that issue; and it is not claimed that such instructions were not ample and adequate. While it was proper for the jury to consider the evidence as to these several details, we think it would not have been proper to split up the issue into such details and call on the jury for answers to each of them. Such answers, as the chancellor observed, would have left him still "at sea" as to the amount of the loss for which defendants were liable.

■ ■ The constitutional guaranty of trial by jury, article 1, section 6, refers to actions at law. In suits in equity the right of trial by jury exists only to the extent provided by our statutes, Code sections 10574-10580. Hunt v. Hunt, 169 Tenn., 1, 10, 80 S. W. (2d), 666, 669. Under these sections the jury does not try the whole case or render a general verdict for one party or the other. It tries only the disputed "issues" submitted to it in the form of questions, and answers them "Yes" or "No," or states the amount or value when the question calls for that. If the chancellor approves such answers, he takes them as the truth of the facts in dispute, and decides the case upon them, the undisputel facts, and the applicable law. Carpenter v. Wright, 158 Tenn., 289, 13 S. W. (2d), 51.; Mutual Life Ins. Co. v. Burton, 167 Tenn., 606, 72 S. W. (2d), 778.

■ ■ The proper practice in formulating and submitting issues has been set out in a number of decisions of our Supreme Court. It is the duty of the chancellor to

see that none but proper and material issues are submitted to the jury. No question can be a proper issue unless it has been made an issue by the pleadings and the evidence; and no issue is material unless the answer to it is necessary to a decision of the case. Otherwise stated, a material issue is one which is determinative of the whole case or a distinct branch of it. All points of evidence, however numerous, going to prove a material issue should be included and covered by that issue and not submitted separately as so many different issues. McElya v. Hill, 105 Tenn., 319, 59 S. W., 1025; Crisman v. McMurray, 107 Tenn., 469, 64 S. W., 711; Cooper & Keys v. Bell, 127 Tenn., 142, 146, 153 S. W. 844, Ann. Cas. 1914B, 980; Wright v. Jackson Const. Co., 138 Tenn., 145, 149, 196 S. W., 488.

In McElya v. Hill, a vendee sought to rescind a sale for fraud of the vendors. Complainant's solicitor tendered some 20 issues making each piece of the proof of fraud the basis of a separate issue. The chancellor, however, taking the view that all of them were merely parts of the issue of whether there was fraud in the sale, submitted only this one issue to the jury. This was held proper. The Court said: ''We have carefully examined the 19 issues tendered by complainant's solicitor, and find that many of them were wholly immaterial, and that none of them went to the whole case. The gravamen of complaintant's suit for rescission was fraud, which question was to be determined upon a consideration of all the facts and circumstances in the case. Complainant's counsel sought to make every fact tending to show fraud the basis of a separate issue, thus indefinitely multiplying the issues, to the dismay and confusion of the jury, when the whole evidence could be considered under the issue, was

there or not fraud in the sale?" 105 Tenn., 324, 325, 59 S. W., 1026.

Crisman v. McMurray was a suit by one partner against another for settlement of the partnership. The chancellor submitted to the jury 191 "so-called issues, presenting separately, and almost exclusively, a mere controversy as to some isolated, and in itself inconclusive, fact." This was held reversible error. Said the Court: "Any number of points in evidence tending severally to establish a controlling controverted fact should be covered by one issue, and not submitted separately in as many different issues. The latter course was largely pursued in this cause. Whether or not such controlling fact really exists is a true question of fact, and the proper subject of a single issue." 107 Tenn., 471, 472, 64 S. W., 712.

■ Upon the above cases we think the chancellor properly declined to submit the five issues above quoted. They were only fragments of the determinative issue of the amount of the loss, and were comprehended in that issue; and the chancellor rightly refused to separate that issue into these details and require the jury to answer each of them. Such a course would have caused complication and confusion and left the determinative issue still unsolved. The issue as submitted was in the same form as a like issue in Gulf Compress Co. v. Insurance Co., 129 Tenn., 586, 167 S. W., 859.

Defendants insist that upon their motion for a new trial the chancellor did not weigh the evidence and was not satisfied with the verdict, but overruled the motion because he thought he was bound to do so if there was any evidence to support the verdict; and that, this being so, we must remand and reverse for a new trial.

Counsel refer to numerous cases which were remanded because the trial judge either had not weighed the evi-

dence or had expressed dissatisfaction with the verdict. Railroad v. Brown, 96 Tenn., 559, 35 S. W., 560; Railroad v. Neely, 102 Tenn., 700, 52 S. W., 167; Telephone & Telegraph Co. v. Smithwick, 112 Tenn., 463, 79 S. W., 803; Spoke & Handle Co. v. Thomas, 114 Tenn., 458, 86 S. W., 379; Vaulx v. Tennessee Cent. R. Co., 120 Tenn., 316, 108 S. W., 1142; Curran v. State, 157 Tenn., 7, 4 S. W. (2d), 957; Carter v. Pickwick Greyhound Lines, 166 Tenn., 200, 60 S. W. (2d), 421; State ex rel. v. Kenner et al., 172 Tenn., 34, 109 S. W. (2d), 95.

These cases declare that, upon a motion for a new trial challenging the sufficiency of the evidence to support the verdict, it is the duty of the trial judge to weigh the evidence and satisfy himself that it preponderates in favor of the verdict, or, if it does not, to grant a new trial; and that if the record affirmatively shows he did not perform this duty the appellate court must reverse and remand for a new trial.

While these were jury trials at law, the rule is equally applicable to jury trials in chancery under Code sections 10574-10580, since they are conducted like jury trials at law (sec. 10579). Mackie v. Fuqua, 14 Tenn. App., 176, 188; Mutual Life Ins. Co. v. Burton, 167 Tenn., 606, 618, 72 S. W. (2d), 778, 782.

In this case the chancellor's decree overruling defendant's motion for a new trial recites: "The Court does hereby approve the verdict of the jury and decrees that complainant . . . recover of defendants" the amount of the verdict, with interest and costs. But counsel argue that this approval was merely formal, and that the chancellor's opinion directing the entry of this decree shows he did not perform his duty of weighing the evidence and satisfying himself that it justified the verdict.

██ The opinion, however, was not made part of the bill of exceptions or copied upon the minutes (Frierson v. Smithson, 21 Tenn. App., 591, 113 S. W. (2d), 778, and cases there cited), but it appears to have been signed by the chancellor, filed by the clerk and master, and copied into the transcript, doubtless because the decree stated that by consent the opinion was made "part of the technical record in this cause."

██ ██ But assuming this made it part of the record, we think it does not sustain defendants' contention. It must of course be considered in connection with the grounds of their motion to which it was a response. Though their answer admitted liability and the only issue was the amount, their motion contained the usual grounds by which both liability and the amount are disputed; that there was no evidence to support the verdict, that the verdict was against the weight of the evidence, that the verdict was excessive, and that it was so excessive as to indicate passion, prejudice, or caprice. Most of the evidence was directed to showing the cost of repair or replacement of the property damaged by the fire. Counsel contended that the cost of repair or replacement was not the measure of the loss, that the evidence of such cost was immaterial, and that there was no material evidence to support the verdict. The opinion dealt with this ground of the motion as well as the others. It reviewed the evidence and discussed the law at length, and is too long to be here quoted in full. Its pertinent parts follow: "As was stated hereinabove, there was only one issue submitted to the jury in this case, and that issue was as to the amount of the loss sustained by complainant by reason of the fire. Both parties prior to the trial had proceeded throughout their negotiations on the assumption that the cost of repairing the damage as provided

in the insurance policy, was the true measure of liability. The estimates made by the witnesses for both complainant and defendants were based on the cost of repairing the damage.''

After referring to the fact that the jury had found the amount of the loss to be $6,988, quoting the standard clause of the policy, and mentioning the fact that the jury in the former trial had fixed the loss at $7,000, the opinion continued:

''The question now arises as to the granting of a new trial on the ground that the verdict of the jury is excessive, and not in accord with the preponderance of the evidence.

''There can be no question but that there was a material dispute of fact between the parties as to the amount of the loss or damage under the policy of insurance in question. This was the sole material issue of fact.

''The defendants insist that the preponderance of the evidence conclusively showed that the cost of repairing or replacing the damaged property would have been about $3500.00, and certainly not in excess of the highest estimate made by their witnesses of about $4300.00. While complainant insists that the estimate of its chief witness on this point of $8300.00 was reasonable, and the true amount of the loss.

''The jury may have reasonably considered that, if the defendants, as it is insisted, could have liquidated or discharged their liability for approximately $3500.00 by making the repairs, as they had the option to do under the terms of the contract, they would have done so, or should have done so, in view of the insistence of complainant from the outset, that it would require more than the full face of the policies ($7500.00) to restore the property.

"In the opinion of the Court the issue of fact was fairly presented to the jury with the result about described.

"Furthermore, there can be no question but that there was material evidence upon which the jury might reasonably have based their verdict in this cause.

"A reputable and experienced builder and contractor testified that he had carefully examined the premises in question, and had made a detailed estimate as to the cost of repairing or replacing the damaged property with material of like kind and quality, and that the cost thereof would amount to $8300.00.

"On cross examination his testimony stood up and was unimpeached except that other contractors (witnesses for defendants) estimated the cost of repairing at a lesser amount.

"A witness of the defendants, another reputable contractor, on whom defendants relied heavily in this case, estimated the cost of repairs at about $4200.00 but on cross examination he admitted certain omissions in his estimated cost, and in one instance in particular, he admitted that the cost of material alone, with which to replace a mahogany stair rail and certain wood-work in connection therewith, would cost approximately twice his total estimate of that item for both material and labor, if material of the like kind and quality were used.

"Under such circumstances, what is the duty of the court?

"Undoubtedly a trial judge has the discretion to set aside a verdict and grant a new trial, where he regards the evidence as insufficient to sustain the verdict of the jury."

At this point the opinion quoted from Railroad v. Neely, supra, Railroad v. Brown, supra, and authorities

of a different tenor from other jurisdictions, and continued:

"Under all the facts and circumstances in this case, the Court cannot set aside the finding of the jury on the evidence for any reason other than that the court might have reached a different conclusion from the evidence, had he been on the jury, and under the authorities above quoted, this would not be a proper course.

"But defendants insist that, if a new trial is refused, a substantial remittitur should be suggested.

"The Court cannot reasonably conclude that the jury was actuated by passion, prejudice or unaccountable caprice, so as to bring the case within the statute as to suggested remittiturs. (Code Sec. 8987.)

"On the other hand, the court is of the opinion that if it suggested a remittitur, for any other reason than that the verdict was so excessive as to indicate passion, prejudice or caprice on the part of the jury, such action would amount to an invasion of the province of the jury and a substitution of the judgment of the Court for that of the jury, on the sole issue of fact submitted to them."

Then the opinion referred to authorities on when a verdict may be directed and to the statute (Code, sec. 8984) providing that not more than two new trials shall be granted to the same party in an action at law, or upon the trial by jury of an issue of fact in equity; and the opinion concluded as follows:

"Litigation should not be needlessly prolonged. The above quoted statute indicates a policy which is probably sound. In addition to the conclusions above indicated, this court is definitely of the opinion that if a new trial were granted and this question submitted again to another jury, in all likelihood the result would be the same as in the two former trials. Thus, after another

period of waiting, with additional expense to the parties, and to the State and County, the parties would find themselves several months or a year hence, right where they now are, if a new trial were granted, except that no third new trial could then be granted on the facts.

"From all of the above the court concludes that the motion of defendants for a new trial should be overruled and a decree for the complainant entered for the amount found by the jury to be due under said insurance policies, with interest thereon from the date of the filing of the original bill in this cause."

We find nothing in this opinion to bring it within the authorities referred to above. In all of them the statements of the trial judge made it clear that he did not weigh the evidence or that he was not satisfied with the verdict. This opinion shows neither. On the contrary, it shows the chancellor weighed the evidence and pointed out why that for complainant outweighed that for defendants and why the jury might reasonably have reached the verdict they reached. These reasons, he said, were that if the cost of repairing the damage had been as small as defendants' estimates, and if they had thought complainant's estimate was excessive, they doubtless would have elected to repair the damage themselves, as they had the option to do; and that the testimony of complainant's chief witness, an experienced and reputable builder and contractor, who estimated the cost of repair or replacement at $8,300, "stood up" under cross-examination and was opposed only by the testimony of defendants' witnesses whose estimates contained significant omissions.

In response to counsel's contention that the evidence of the cost of repair or replacement was immaterial and that there was no material evidence to support the verdict, the opinion stated that both parties had proceeded on the

assumption that "the cost of repairing the damage" was "the true measure of liability," and the estimates of the witnesses for both parties "were based on the cost of repairing the damage." While comparing these estimates and discussing their comparative weight or worth as evidence, the opinion added: "Furthermore, there can be no question but that there was material evidence upon which the jury might reasonably have based their verdict in this cause." Clearly, this was in further response to defendants' contention that complainant's estimate was immaterial and that there was no material evidence to support the verdict; and it was an expression of the chancellor's view upon both the materiality and the superior probative value of the evidence for complainant: that it was material evidence upon which the jury might reasonably have based their verdict, or evidence upon which, in the presence of the opposing evidence, the jury might reasonably have based their verdict. This construction of that sentence accords with what had preceded it and what followed, stating why the estimate of complainant's chief witness was more trustworthy than those of defendants' witnesses.

Certainly that sentence, read in its context, as it must be, does not show, as counsel contend, that the chancellor failed to weigh the evidence or was dissatisfied with the verdict. Nor does the following, on which counsel rely: "Under all the facts and circumstances in this case, the Court cannot set aside the finding of the jury on the evidence for any reason other than that the court might have reached a different conclusion from the evidence, had he been on the jury, and under the authorities above quoted this would not be a proper course."

While this would seem a misappreciation of some of the authorities referred to above (but compare Railroad

Co. v. Finney, 105 Tenn., 648, 650, 48 S. W., 540; South-eastern Greyhound Lines v. Clements, infra), it does not show that the chancellor failed to perform his duty of weighing the evidence, or that he was not satisfied with the verdict. Especially is this true, in view of the other parts of the opinion appraising the evidence and point-ing out why it preponderated in favor of the verdict. Con-sidered with the rest of the opinion, this sentence is too equivocal and ambiguous to call for a reversal. More or less similar expressions of trial judges have been held no ground for reversal. England v. Burt, 23 Tenn. (4 Humph.), 399, 400, 401; Tennessee Coal & R. Co. v. Roddy, 85 Tenn., 400, 401, 5 S. W., 286; Railroad Co. v. Finney, supra; Vaulx v. Tennessee Cent. R. Co., 120 Tenn., 316, 321, 322, 108 S. W., 1142; Manning v. State, 155 Tenn., 266, 283, 284, 292 S. W., 451; Union Traction Co. v. Todd, 16 Tenn. App., 200, 208, 64 S. W. (2d), 26, 31; Garis v. Eberling, 18 Tenn. App., 1, 25, 26, 71 S. W. (2d), 215, 229, 230; Southeastern Greyhound Lines v. Clements, Davidson Law, Opinion (unreported) of Court of Appeals filed May 25, 1940 (quoting opinion of Judge Neil, then trial judge, now a Justice of our Supreme Court); Davis, Adm'x, v. Mitchell, Ex'x (Tenn. App.), 178 S. W. (2d) 889.

There is an additional reason why this expres-sion is no ground for reversal in this case. Issues of liability and the amount are separable in a case involving both (Whitehurst v. Howell, 20 Tenn. App., 314, 326, 98 S. W. (2d), 1071, 1078); but in this case the amount was the only question left open to defendants by the pleadings. In such a case, if the trial judge, after properly weighing the evidence, is not satisfied with the amount of the verdict, but does not suggest an amount with which he would be satisfied, this constitutes no ground for a re-

versal. Vaulx v. Tennessee Cent. R. Co., supra; Tennessee Coal & R. Co. v. Roddy, supra; Jenkins v. Hankins, 98 Tenn., 545, 41 S. W., 1028.

Vaulx v. Tennessee Cent. R. Co. was remanded because the record showed that the trial judge had not weighed the evidence at all; but the court said that O. F. Noel v. T. C. R. R. Co. (unreported), which held that no reversal would be ordered because the trial judge was dissatisfied merely with the amount of the verdict, had been correctly decided. In this connection the Court said: ". . . Such a statement ["that he was not satisfied with the verdict, but would let it stand"] shows that he has weighed and considered the evidence on which the verdict is based. Now the fact that after such consideration he is not satisfied with the amount in such a case we do not think ought to justify a new trial. The fact that he has weighed the evidence, and as a result thereof is not satisfied with the amount, but does not state an amount as the one with which he would be satisfied, or one which he thinks the evidence justifies, indicates that his reflections have not reached that degree of maturity which would enable him to firmly differ with the conclusion reached by the jury. In this view of the case, of course, it would be highly improper to set aside the verdict for mere dissatisfaction on the part of the circuit judge. . . . " 120 Tenn., 321, 322, 108 S. W., 1144.

██ It is true the chancellor's opinion shows he was under the mistake that he could suggest a remittitur only for such excessiveness as indicated passion, prejudice, or caprice (Grant v. Louisville & N. R. Co., 129 Tenn., 398, 165 S. W., 963); but it does not show he was in fact dissatisfied with the amount of the verdict, or would have suggested a remittitur but for such mistake. On the contrary, it strongly suggests that he thought the amount

of the verdict was proper, because he pointed out why complainant's estimate of $8,300 was more reliable than defendants' estimates, referred to the fact that the former verdict had been for $7,000, and expressed his view that upon another trial the verdict would be the same.

We do not minimize the necessity of the trial judge's performance of his duty of acting upon the motion for a new trial by weighing the evidence and seeing that it justifies the verdict; nor are we unmindful that until he has so acted we have no power to act except to remand for a new trial; but we think no case has gone so far as to require a reversal in a case like this where the chancellor despite his legal inaccuracies properly performed his duty, weighed the evidence, pointed out why it justified the verdict, apparently approved its amount in his opinion, and expressly did so in his decree.

Defendants renew their insistence that the cost of repairing or replacing the damaged parts of the building was not the measure of the loss, that evidence of such cost was immaterial to show the amount of the loss, and that there is no material evidence to support the verdict.

The evidence for complainant was that the building was a fine old two-story brick residence, formerly the home of Mr. Stokes, a prominent lawyer, and his wife, a woman of wealth. Though 50 years old, it was originally well-built, later equipped with up-to-date plumbing and electrical fixtures, and kept in splendid repair. Its cost, including these changes, was about $25,000; and the insurance regularly carried on it ranged from $18,000 to $14,000 until a few years before the fire. One of the policies sued on had been in force nearly three years and the other nearly two. The fire destroyed "a substantial part" of the house, "pretty well demolished" its interior, part of which was mahogany and fine woodwork. The

materials, labor, and cost necessary to restore it as it was before the fire were itemized by one of complainant's witnesses; and the total of such cost was $8,344.15. He also estimated the cost of the building at $22,000 and its value, after deducting 50% for depreciation, at $11,000. Also the umpire selected by the appraisers appraised the "sound value" of the house at $12,500. What was left of it after the fire stood there 13 months, while the parties were disputing; and complainant, having no money to repair or make it inhabitable, had it razed and sold the salvage for $512.

Witnesses for defendants estimated the cost of restoring the house at from $3,500 to $4,300; and two realtors gave opinions as to its market value. They said the spread of business toward that section had made it a "twilight zone" between the residence and the business sections, its values for residential purposes had been practically destroyed, and its values for business purposes were not yet established. One of these witnesses expressed the opinion that the market value of the building (apart from the land) was $3,500; and the other said it was nothing, his opinion being that the land without the house would sell for as much as the land with the house.

The argument for defendants is that this was a "problem" house, whose market value was less than what it would cost to repair or replace its damaged parts, which were only about one-third of the structure; that under the standard form above quoted, defendants were liable only for "the actual cash value", i. e., the market value of the property damaged, less "proper deduction for depreciation however caused"; that the replacement cost was not the measure of the loss but a limitation upon the recovery; that the measure of the loss and the recovery was the difference between the market value (less depre-

ciation) just before the fire and such value after the fire; and that the evidence shows without dispute that such difference was less than $3,500, and there is no evidence to support a verdict for $6,988.

We cannot follow this argument. Our "valued" policy law (Code, secs. 6172-6174), by requiring the value of buildings to be fixed in the policies, forecloses controversy as to such value after a total loss, but of course does not reach a case like this where the loss is only partial. In other jurisdictions permitting open policies on buildings it is held that the phrase "the actual cash value," as used in the (old New York) standard form above quoted, as well as in the present New York standard form, does not mean "market value," but is a wider term which means actual value expressed in terms of money, or value to the owner, or the loss he suffers through being deprived of the property; and that the market value of a building, or what it could be sold for, is not the measure of recovery for its loss. The reason is that buildings have no established market value in the true sense of the word. Property which is daily dealt in and is readily replaceable in a current market has an established market value, which corresponds with its actual value and also with its replacement cost; but buildings, independently of the land on which they rest, are not the subject of market sales and therefore have no established market value which corresponds with their actual value; and the cost of reproducing them as they were before the loss usually approximates an expression of their actual value in terms of money. Smith v. Allemannia Ins. Co., 219 Ill. App., 506; Stenzel v. Pennsylvania Fire Ins. Co., 110 La., 1019, 35 So., 271, 98 Am. St. Rep., 481; Boise Ass'n of Credit Men v. United States Fire Ins. Co., 44 Idaho, 249, 256 P., 523; Merchants' Ins.

Co. v. Frick, 5 Ohio Dec. Reprint 47, 2 Am. Law Rev., 336; McAnarney v. Newark F. Ins. Co., 247 N. Y., 176, 159 N. E., 902, 56 A. L. R., 1149; Sebring v. Firemen's Ins Co., 227 App. Div., 103, 237 N. Y. S., 120; Annotation, 56 A. L. R., 1155; 29 Am. Jur., Insurance, secs. 1184-1186; 6 Cooley's Briefs on Insurance (2d Ed.), 5089-5092; cf. Gulf Compress Co. v. Insurance Co., 129 Tenn., 586, 601-606, 167 S. W., 859, 862-864; Shipley v. American Central Ins. Co., 21 Tenn. App., 259, 109 S. W. (2d), 100.

While some of these authorities do say that the cost of replacement is not the measure of the loss but a limitation upon the recovery, all of them recognize that replacement cost, with physical depreciation for age, wear, and tear, is not only evidence of the amount of the loss but is perhaps the most potent factor, among all the others, in ascertaining the amount. 6 Cooley's Briefs on Insurance (2d Ed.), 5091-5092; 7 Couch on Insurance, sec. 1841; Annotation, 56 A. L. R., 1160-1162; 29 Am. Jur., Insurance, sec. 1186; see Valuation of Property to Measure Fire Insurance Losses, James C. Bonbright and David Katz, 29 Columbia Law Review, 857, 876-881, 898.

While replacement cost is a dominant factor in fixing the amount of recovery for total loss of a building, it plays an even greater part in fixing the amount of recovery for a partial loss to a building. It would seem that the only practical way to measure the extent of partial damage to a building would be to inventory its damaged parts, and the only way to express such damage in terms of money would be to count the cost of replacing such parts, so as to restore the building to the same condition it was in just before the fire. And the view which we think supported by the better reason and the greater weight of authority is that depreciation

may not be deducted from such cost because that would make the sum insufficient to complete the repairs and would leave the building unfinished; and this would fall short of the indemnity contracted for in the policy. Fedas v. Insurance Co., 300 Pa., 555, 151 A., 285, 288; MacIntosh v. Hartford F. Ins. Co., 106 Mont., 434, 78 P. (2d), 82, 83, 84, 115 A. L. R., 1164, 1165, 1167, Annotated, 1169; See Burkett v. Georgia Home Ins. Co.; 105 Tenn., 548, 58 S. W., 848; Springfield Fire & Marine Ins. Co. v. Ramey, 245 Ky., 367, 53 S. W. (2d), 560, 563; Citizens' Fire Ins. Co. v. Lockridge & Ridgeway, 132 Ky., 1, 116 S. W., 303; 20 L. R. A. (N. S.), 226.

So we think the evidence of the cost of repairing and restoring the building to the same condition it was in before the fire was not only material, but was the most persuasive, evidence of the amount of the loss for which defendants were liable under the policies. But, as we have seen, the jury were instructed to consider all of the other facts in evidence in finding the amount of the loss. This was as much as defendants were entitled to under the view of the law most favorable to them. McAnarney v. Newark F. Ins. Co., 247 N. Y., 176, 159 N. E., 902, 56 A. L. R., 1149. That case, which has probably gone furthest in minimizing reproduction cost as controlling evidence of value, held that it is for the jury to consider "every fact and circumstance which would logically tend to the formation of a correct estimate of the loss." That is what the jury were instructed to do and what we must presume they did in this case.

Defendants also insist that the verdict is excessive and we should suggest a remittitur. We do not think so. Considering all of the facts, the jury could have reasonably found that the value of the building

immediately before the fire was from $10,000 to $12,000, and that the amount of the loss was from $7,000 to $8,000.

■ ■ Defendants contend that the verdict is "mathematically invalid"; that it was reached by deducting $512, the price for the salvage, from $7,500, the total amount of the policies; and that it is supported by no evidence, since it was undisputed that the building was not a total loss. The jury's deliberations were secret, and it is not known what considerations moved them. Their verdict was within the amount of the loss shown by evidence which they were at liberty to accept, and could reasonably have been reached upon a consideration of all the numerous factors bearing on the issue. There is nothing to show that the jury disregarded the law and the evidence, and reached their verdict upon improper considerations. We may not reverse for alleged misconduct of the jury unless it affirmatively appears that there was such misconduct and that it prejudicially affected the result. Thomason v. Trentham, 178 Tenn., 37, 154 S. W. (2d), 792, 138 A. L. R., 461.

Finally defendants complain of the allowance of interest. Counsel contend that the claim under the policies was not within Code section 7305, which makes allowance of interest imperative; and that, though it would have been within the discretion of the jury to allow interest as damages if the issue had been submitted to them, the chancellor himself had no such discretion and could make no allowance of interest, in the absence of a finding of the jury on which to base such allowance. Code section 7305 is as follows: "Demands bearing interest.—All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific

time therein mentioned. (1786, ch. 4, sec. 3; 1835-36, ch. 50, sec. 1.)''

 The policies were not bonds, notes, or bills of exchange; nor, as the event turned out, were they ''liquidated and settled accounts.'' An account is liquidated and settled when the amount due is fixed by law, or has been ascertained and agreed on by the parties. Arco Co. v. Garner & Co., 143 Tenn. 262, 266, 227 S. W., 1025, 1026. Except as affected by our valued policy law in the event of total loss, the policies were not promises to pay a sum certain, but to pay the amount of the loss, which was to be settled either by agreement of the parties or by arbitration. The policies provided: ''. . . the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.''

The policies would not come within Code section 7305 until after the amount of the loss had been fixed, either by agreement or arbitration, and until after 60 days had elapsed, when by the terms of the policies the amount of the loss would become due and payable. If that had happened here, or if the loss had been total so that our valued policy law would have fixed the amount due and payable upon proof of such loss, in either case the policies would have become ''liquidated and settled accounts'' signed by the debtor, within section 7305, and would have borne interest from the time they became due and payable. Such, we think, is the meaning of the language, relied on by complainant, in People's Bank & Trust Co. v. United States Fidelity & Guaranty Co., 156 Tenn., 517, 521, 3 S. W. (2d), 163, 164, which is as follows: ''A policy of life insurance falls within this section

and bears interest from the time it becomes due and payable. The allowance of interest is imperative. Knights of Pythias v. Allen, 104 Tenn., 623, 58 S. W., 241. Fire insurance policies, accident insurance policies, and other insurance contracts proper would come under this section of the Code.''

None of the obligations mentioned in this section bear interest until they become due and payable, unless they otherwise provide. A policy of insurance falls within this section from the time it becomes due and payable, but not before. This distinction was recognized in Knights of Pythias v. Allen, 104 Tenn., 623, 58 S. W., 241.

For these reasons we think the claim on these policies was not within this statute and the allowance of interest was not imperative.

It is conceded that, if the question had been submitted to them, the jury could have allowed interest on the amount they found to be due; but counsel contend that the chancellor himself had no power or discretion to allow interest on the amount due, without having submitted the issue of interest to the jury. In Railroad Co. v. Fort, 112 Tenn., 432, 459, 80 S. W., 429, 436, which was an action at law for damages for burning a building, the verdict of the jury fixed plaintiff's damages ''at $10,000, with interest from the date of the fire.'' This was held sufficient to warrant entry of a judgment for the damages and the interest, since there was no dispute as to the date of the fire, the law fixed the rate of interest, and the amount of interest was simply a matter of calculation. But, owing to the difference between jury trials at law and jury trials in equity, the chancellor had far more power here than the circuit judge had there. There the jury tried the whole case; here, as we have seen, the

jury tried only the "disputed issues"; and it was for the chancellor to dispose of the case upon the jury's finding of the amount of the loss, the undisputed facts, and the applicable law. No fact in respect of the allowance of interest was disputed; the dates of the fire, the proof of loss, the filing of the bill, were undisputed; and the jury's finding fixed the amount on which interest could be allowed. So it was proper for the chancellor, taking the amount found by the jury and the undisputed facts, to exercise his discretion in the allowance of interest. See Carpenter v. Wright, 158 Tenn., 289, 13 S. W. (2d), 51; Mutual Life Ins. Co. v. Burton, 167 Tenn., 606, 2 S. W. (2d), 778.

This brings us to complainant's assignments of error, which insist that the chancellor should have allowed interest from the date of the fire or the date of the proof of loss, and should have allowed the statutory penalty.

Since the claim here sued on did not belong to the class of obligations which bear interest by statute (section 7305), it was discretionary with the chancellor to allow or disallow interest on the claim. We think he did not abuse this discretion by allowing interest from the date of the filing of the bill rather than from an earlier date. Equitable Trust Co. v. Central Trust Co., 145 Tenn., 148, 185, 239 S. W., 171, 181; Tennessee Fertilizer Co. v. International Agr. Corp., 146 Tenn., 451, 473, 223 S. W., 81, 88; Johnston v. Cincinnati, N. O. & P. R. Co., 146 Tenn., 135, 167, 240 S. W., 429, 438; Southern Construction Co. v. Halliburton, 149 Tenn., 319, 338, 258 S. W., 409, 415; Tennessee Consol. Coal Co. v. Home Ice & Coal Co., 25 Tenn. App., 316, 325, 156 S. W. (2d), 454, 460.

██ Nor do we think the chancellor erred in refusing to allow the penalty. As he observed, there was legitimate difference between the parties as to the amount of the loss. This was one of the grounds of defendants' objection to the proof of loss. Thereafter, as they had a right to do under the terms of the policies, they demanded an appraisal; but neither party was satisfied with the award and it was set aside without objection of either. As stated above, the amount of the loss had never been fixed and the policies had not matured by their terms, so as to enable complainant to make the demand required by the penalty statute. Code 1932, sec. 6434. Defendants were within their rights in litigating the issue of the amount of the loss. So we think this was no case for the allowance of the penalty. St. Paul Fire & Marine Ins. Co. v. Kirkpatrick, 129 Tenn., 55, 164 S. W., 1186; De Rossett Hat Co. v. London Lancashire Fire Ins. Co., 134 Tenn., 199, 183 S. W., 720; Silliman v. International Life Ins. Co., 135 Tenn., 646, 188 S. W., 273; Thompson v. Concordia Fire Ins. Co., 142 Tenn., 408, 215 S. W., 932.

All the assignments of error of both parties are overruled. The decree of the chancellor is affirmed. A decree will be entered here for the complainant against defendants and the surety on their appeal bond for the amount of the decree below, with interest, and the costs of the appeal.

Howell and Hickerson, JJ., concur.