# NATIONAL SURETY CORPORATION v. BUCKLES.
## —219 S. W. (2d) 207.

Eastern Section.   September 17, 1948.

Petition for Certiorari denied by Supreme Court, March 11, 1949.

Gore & Gore, of Bristol, and Jones & Woodward, of Bristol, Va., for plaintiff.

Caldwell & Brown and J. L. Stern, all of Bristol, for defendant.

HOWARD, J. After studying the case very carefully, we find that the very able opinion of the Chancellor herein fully sets forth the facts in which we concur, and the proper legal conclusions. We therefore adopt *in toto* said opinion, which is as follows:

"Complainant sues to recover $1030.00 paid by it to the State of Tennessee on August 25, 1942, under claim made by the State on fidelity bond in the penalty of $2500.00, executed by the Surety Corporation covering Claude J. Buckles, previously employed by the State as a highway patrolman. The cause of action is based on the surety's right to exoneration from its principal's

estate, to subrogation to the rights of the obligee, and more particularly as the proof has developed, on the contract of indemnity contained in application for bond executed by defendant on February 5, 1938. The application includes these provisions:

"1. (b) To indemnify the Surety, its successors and assigns against all loss, liability, costs, damages, attorneys' fees and expenses which the Surety shall sustain or incur in consequence of executing the bond herein applied for or any renewal thereof or any other bond in behalf of the undersigned, in making any investigation on account of such bond, in prosecuting or defending any action that may be brought in connection therewith or in enforcing any of the agreements herein contained.

"2. The Surety shall have the right to adjust, settle or compromise any claim under such bond, unless the undersigned shall request the Surety to litigate such claim and shall deposit with the Surety collateral satisfactory to it in kind and amount.

"3. In event the Surety shall, in good faith, make any payment on account of any claim under any such bond or on account of costs, damages, attorneys' fees or expenses, an itemized statement thereof sworn to by an officer of the Surety, or the voucher or vouchers or other evidence of such payment shall be *prima facie* evidence of the fact and extent of the liability of the undersigned in any claim or suit hereunder.

"By demurrer question was raised as to the regularity of the bond, the propriety of payment of the claim by the surety, the statute of limitations, and others. The demurrer having been overruled, answer was filed and a jury demanded to try the issues of fact, a number of such issues having been tendered by defendant. The

complainant has insisted throughout that no determinative issues exist triable by a jury. A jury was impaneled and the cause heard.

"The defense most prominent in the answer and at the hearing is that the complainant paid the claim under the bond voluntarily, without compulsion, and with full knowledge that defendant was "contesting" it, that is, denying any liability to the State. The State, through its Assistant Attorney General, W. H. Eagle, first made demand on the Surety Company on March 4, 1941, for $635.00 and on August 6, 1941, for an additional $395.00, both claims based on reports of State Auditor, F. W. Loveless, which indicated that Buckles had collected for the State a number of fines and costs from Justices of the Peace in East Tennessee Counties and failed to account for same. Mr. Buckles stated then and states now that he had collected the monies in question and remitted to Knoxville and Nashville offices of the Highway Patrol by mail and by messenger, by cash and by check, that the 'shortage' resulted not from his default but from that of others or by failure to obtain proper credit for remittances made.

"The Surety Company wrote a number of letters to Buckles between March 30, 1941, and August 26, 1942, and afterwards, requesting that he furnish money to cover the loss, or make some arrangement for its satisfaction, the receipt of none of these letters being denied, and it being uncontroverted that none was answered by Buckles. During the latter part of 1941, however, he retained John Ed Odell as his attorney, who undertook to clear up the matter by investigation and by conference with General Eagle for the State. There is some difference in the testimony concerning the nature of the nego-

tiations carried on by Mr. Odell, General Eagle stating that Mr. Odell asked and obtained time to attempt to clear the matter up, so as not to interfere with new employment Mr. Buckles had obtained in the State of Virginia. Mr. Odell states that he asked General Eagle to sue Buckles, at the January 1942 term of the Law Court at Bristol, to obtain an adjudication of the validity of the claim, and that General Eagle agreed to do so. It is unnecessary to make a finding as to whether there was such an agreement because there is no evidence that the agreement, if made, was ever communicated to the Surety Company, nor is there any evidence that the Surety Company was ever requested to require the claim to be litigated. It is clear that the Surety Company knew that Buckles denied he had misappropriated the money, and Mr. Odell advised the Surety of the basis of defense. From this, it is suggested that knowledge must be imputed to the Surety that litigation was expected, but even if knowledge could be so found, there was no express request to litigate nor proffer of collateral security to save the Company harmless as by the contract required, and more than seven months passed between the date assigned for litigation and the settlement, without suit having been filed or any communication to the Surety Company by the principal.

"In this state of the record, and there being no dispute on these facts, deemed determinative for reasons hereinafter noted, no issues were by the Court submitted to the jury.

"As before observed this suit is based in part on a contract of indemnity contained in application for bond admittedly signed by defendant. His testimony that he did not read it cannot avoid the consequences, espe-

cially since no Insurance Company Agent participated in filling in the blanks. This Buckles admits he did. The application covers the particular bond described, renewals, and 'any other bond' executed by the Company on behalf of the applicant. The provisions quoted at the beginning of this memorandum authorize the Surety to adjust, compromise, or settle, without litigation, any claims arising. The principal, or applicant, might require litigation on tender of collateral security deemed satisfactory by the Company. On settlement made in good faith the Voucher of payment is agreed to be treated as *prima facie* evidence of the fact of and extent of applicant's liability. It was conceded at the conclusion of the evidence that if this contract be held valid and enforceable, no determinative and disputed question of fact is present in the case. No cases are cited on which to base a holding of invalidity; no reason is advanced for such holding other than the suggestion that public policy prevents enforcement of such a waiver of rights.

"On principle nothing unreasonable is apparent in the provisions in question. Even in the absence of contract a Surety is under no absolute requirement to submit to litigation and consequent possible increase of loss. State ex rel. Terry v. Blakemore, 54 Tenn. 638; McNeilly v. Cooksey, 70 Tenn. 39.

"The principal was beyond the jurisdiction at the time the claim was pending, while the Surety might, so far as it knew, have been obliged to defend separately here. Williams Code, Section 8611. Our statutes reflect a policy of the reasonableness of the requirement of collateral by the Surety before submission to litigation, Williams' Code, Section 9548.

"In a number of other jurisdictions, provisions similar, and in the District of Columbia case identical, to those under consideration, have been held valid and enforceable. Illinois Surety Co. v. Maguire, 157 Wis. 49, 145 N. W. 768; United States Fidelity & Guaranty Co. v. Baker, 136 Ark. 227, 206 S. W. 314; Carroll v. National Surety Co., 58 App. D. C. 3, 24 F. (28d) 268.

■ "Our Supreme Court, in unreported memorandum opinion by Mr. Justice Chambliss, Highsmith, U. S. F. & Co,[1] held valid a somewhat similar but even more rigorous provision in a bond application, wherein the Surety's voucher of payment was agreed to be treated as conclusive evidence of the principal's liability to it. For the reasons indicated the contract provisions are held to be valid, and on the facts controlling.

■ "It is undisputed that payment was made by the Surety as claimed. The delay of fifteen months between date of claim and date of payment was in part at the request of defendant's attorney, and throughout characterized by the surety's efforts to obtain some settlement or disposition of the claim by defendant. It is clear that he, and his attorney during such time as the attorney maintained correspondence with the Surety, was fully advised of the Surety's actions and intentions. At no time during the pendency of the claims was there suggestion of defect in the bond, or technical defense by reason thereof, or that Buckles might have a defense as against the Surety in the event payment was made or litigation occurred. General Eagle corroborated complainant that the State continued its demand that payment be had, and under all the circumstances it would be unreasonable

[1]No opinion for publication.

to ascribe bad faith to the Surety for refusing longer to delay payment.

■  "It is not held here, of course, that defendant misappropriated the State's money; that question is not reached.  The complainant, having paid $1030.00 on claim made under its bond covering defendant, is entitled to recover that amount from him, under the terms of its indemnity agreement contained in the application which he executed, and on which complainant acted.  The decree should include interest from date of payment, and the costs of the case will be taxed to defendant.  The contract also provides reimbursement for expense of litigation, etc., but none was proved."

In the Highsmith case our Supreme Court in the opinion by Justice Chambliss said:

"We understand the determinative question raised by the demurrer to be thus stated in the first ground thereof:

'The condition in the alleged application executed by defendant, Bertram L. Highsmith, to the effect that "vouchers or other evidence of payment of such loss by said Company to the Employer under such obligation . . . shall be taken as conclusive evidence against me and my estate of the fact and extent of my liability under said obligation to the United States Fidelity & Guaranty Company" is illegal and unenforceable and contrary to the public policy of this State.  The bill is predicated on this illegal condition and cannot be sustained without its enforcement.'

"This Court is not of opinion that this provision is contrary to the public policy of this State.  We are content to follow what clearly appears to be the weight of authority on this question, discussed, cited, and quoted from in the able briefs now in the file and on oral argu-

ment. This ground of demurrer is therefore overruled.''

For authorities from other states supporting the legal principle in the Highsmith case, see 68 A. L. R. 333; 144 A. L. R. 521.

It is insisted here that the Chancellor erred in withdrawing the issues from the jury; that the jury should have been permitted to pass upon the issues of fact.

In the absence of a dispute over determinative issues of fact, it is the duty of the Chancellor to withdraw the case from the jury and render a decree in accordance with the law applicable to the case.    Gibson's Suits in Chancery (4th Ed.) Sections 548 and 548a; Mutual Life Ins. Co. v. Burton, 167 Tenn. 606, 72 S. W. (2d) 778; Hunt v. Hunt, 169 Tenn. 1, 80 S. W. (2d) 666; Lincoln County Bank v. Maddox, 21 Tenn. App. 648, 114 S. W. (2d) 821; Exum et ux. v. Griffis Newbern Co. et al., 144 Tenn. 239, 230 S. W. 601; Third National Bank v. American Equitable Insurance Co., 27 Tenn. App. 249, 178 S. W. (2d) 915.

The Chancellor found there were no disputed issues of fact to be submitted to the jury; that only legal questions were involved, namely, the construction and interpretation of the contract of idemnity contained in the application which the defendant admittedly signed, and we concur in his findings and conclusions.    Accordingly, all assignments of error are overruled and the Chancellor's decree will be affirmed at defendant's costs.

McAmis and Goodman, JJ., concur.