**SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**CRITERION INVESTMENT CORPORATION, et al., Defendants.**

**No. CIV–3–87–0502.**

United States District Court, E.D. Tennessee, N.D.

Sept. 27, 1989.

---

**836**

Dean B. Farmer and T. Kenan Smith, Hodges, Doughty & Carson, Knoxville, Tenn., for plaintiff.

Jess D. Campbell, Knoxville, Tenn., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JORDAN, District Judge.

This is a diversity civil action brought by a corporate surety to recover upon a general agreement of indemnity given by the defendants to the plaintiff. The action was tried before the Court without a jury May 3, 1989. After having taken this case under advisement, the Court states the following findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

Counsel for the parties provided a great service to the Court by compiling a binder of 60 exhibits which were introduced into evidence by stipulation. A copy of the general agreement of indemnity upon which the plaintiff sues is the plaintiff's exhibit number 60. This general agreement of indemnity, signed April 10, 1986 by Criterion Investment Corporation (hereinafter "Criterion") and John H. Smelser, Jr. and Norma J. Smelser individually, provides that the indemnitors agree to indemnify the plaintiff against all loss and expense incurred in connection with any bonds issued by the plaintiff as a corporate surety for Criterion, any subsidiary of Criterion, any affiliate of Criterion, or "anyone for whom Criterion Investment Corporation requests a bond." This general agreement of indemnity provides that it is given in consideration of the plaintiff's execution as a surety of bonds for the benefit of Criterion, any subsidiary, any affiliate, or anyone for whom Criterion requests a bond, and that it is given as an inducement to the plaintiff's execution of any such bonds. The scope of the indemnity provided by the agreement includes "[a]ll loss and expense, including attorney fees, incurred by [the plaintiff] by reason of having executed any [b]ond," as well as an amount sufficient to discharge any claim made against a corporate surety on any such bond. With respect to this latter category of indemnity, the agreement provides that the surety, the indemnitee, may either apply any such payment made by an indemnitor towards the satisfaction of the claim made on the bond, or hold the payment as collateral security against loss on the bond.

Since it is the basis for this entire action, some of the other provisions of the general agreement of indemnity merit close examination. The agreement grants to the surety, the indemnitee, "the exclusive right for itself and the [indemnitors] to determine *in good faith* whether any claim or suit upon any [b]ond shall ... be paid," and provides also that the surety's "determination *in good faith*" concerning any such claim and the incurring of any expenses in the investigation, defense and payment of any such claim "shall be final and conclusive." (Emphasis added.) It is agreed in the general provisions of the general agreement of indemnity that the surety, the indemnitee, will have every right, defense or remedy available to an uncompensated, personal surety, including the rights of subrogation

and of exoneration. The indemnitors agree in the agreement to "procure the discharge of Surety from any bond" upon the surety's request, and the indemnitors "warrant" that each of them is "specifically and beneficially interested" in obtaining any bonds executed by the surety for the benefit of Criterion or any of its subsidiaries or affiliates, or anyone for whom Criterion might request a bond. Immediately above the indemnitors' signatures on the general agreement of indemnity appear provisions concerning the manner in which an indemnitor may eliminate its, his or her liability under the agreement, which otherwise "is a continuing obligation," with respect to any bond to be executed in the future.

The parties stipulated that PaceSetter Transportation Company (hereinafter "PaceSetter") became an affiliate or subsidiary of Criterion in April, 1986. The evidence showed that Criterion acquired PaceSetter from the latter's bankruptcy trustee in order to acquire the bankrupt's various authorities to operate throughout the continental United States as a motor carrier of freight. This acquisition brought certain liabilities as well to Criterion, including liabilities for fuel taxes owed to various States. At all pertinent times, the defendant John H. Smelser, Jr. was a principal shareholder of Criterion, and its chief executive officer. The defendant Norma J. Smelser, who had been divorced from the defendant Mr. Smelser by the time of the trial, was at all pertinent times the defendant Mr. Smelser's spouse. The parties stipulated to the introduction into evidence of a transcript of her deposition. She admitted signing the general agreement of indemnity, and knew generally in April, 1986 that Criterion was acquiring PaceSetter, but otherwise she played no part in the management of this business.

The plaintiff's claims for indemnity are premised upon several bonds which it executed as a corporate surety. It is easier to understand these claims by categorizing them in reference to the bonds or groups of bonds to which they relate. The first such bond is number 5093592, dated April 10, 1986. This is a broker's surety bond under § 211(c) of the Interstate Commerce Act, now 49 U.S.C. § 10927(b). The statutory law requires of a broker licensed by the Interstate Commerce Commission "a bond, insurance policy, or other type of security approved by the Commission to insure that the transportation for which a broker arranges is provided." In keeping with the statutory language, the bond [the plaintiff's exhibit no. 1] is conditioned upon PaceSetter's payment "to travelers or shippers by motor vehicle [of] any sum or sums for which [PaceSetter] may be held legally liable by reason of [PaceSetter's] failure faithfully to perform, fulfill, and carry out all contracts, agreements, and arrangements" made by it as a broker.

Mr. Smelser's testimony was uncontroverted on the points that PaceSetter's previous management had purchased this broker's surety bond before Criterion's acquisition of PaceSetter, and that, after this acquisition, Criterion never did business as a broker, as distinguished from a motor carrier of freight. Criterion arranged for the carriage of much if not all of the freight consigned to it as a motor carrier by entering into short-term or "trip" lease agreements with equipment (i.e., tractor or tractor-trailer) lessors. See 49 U.S.C. §§ 11101(c)(1)(B) and (c)(2), and 11107. According to the testimony of Criterion's former in-house counsel, PaceSetter had the authority to act as a freight broker, in addition to its motor freight carrier authorities.

The plaintiff's exhibits numbers 2 through 21 evidence demands for payments under this broker's surety bond. These exhibits show the following claims history with respect to the broker's surety bond in issue.

Ken Bay Transportation Company filed a claim against the bond in the amount of $1,754.89 by a letter addressed to the plaintiff and dated August 26, 1986. Among the documents which it submitted in support of its claim was a copy of its trip lease agreement with PaceSetter. Mr. Don Reedy of the plaintiff's surety bond claims department responded to this claim by a letter dated September 29, 1986, with copies directed to PaceSetter at P.O. Box 64,

Winston–Salem, North Carolina, and to Mr. John Smelser, President, Criterion, Box 23408, Knoxville, Tennessee. On January 29, 1987, the plaintiff issued a draft in the amount of $1,754.89 to satisfy Ken Bay Transportation Company's claim.

On February 17, 1987, Ken Bay Transportation Company wrote a letter to Mr. Reedy of the plaintiff, making an additional claim in the amount of $262.50. Enclosed with Ken Bay Transportation Company's letter were copies of documents including another trip lease agreement, and an August 1, 1986 form letter from PaceSetter to Ken Bay Transportation Company, advising that PaceSetter was going to withhold payment on the subject trip lease pending its receipt from the lessor of a signed receipt of equipment upon completion of the trip, and a report signed by the driver concerning the condition of the vehicle upon the completion of the trip. Other copies of documents enclosed with Ken Bay Transportation Company's February 17, 1987 letter are copies of a signed driver's vehicle inspection report and of a signed receipt of owner (lessor) for the equipment entrusted to the driver, which apparently had been supplied to PaceSetter with Ken Bay Transportation Company's August 27, 1986 demand for payment. Ms. Dee Miller of the plaintiff's surety claims department responded to Ken Bay Transportation Company concerning this second claim in a letter dated March 9, 1987, copies of which were addressed to the defendants Mr. and Mrs. Smelser at 3212 Washington Pike, Knoxville, Tennessee, to Criterion at Box 23408, Pellissippi Parkway, Knoxville, Tennessee, and to PaceSetter at P.O. Box 64, Winston–Salem, North Carolina. A blind postscript to the Smelsers advised them of their liability as personal indemnitors for claims paid under bonds issued for Criterion. The plaintiff paid Ken Bay Transportation Company's second demand in the amount of $262.50.

Barbline, Inc. made its claim for payment under the broker's surety bond by a letter from its attorney dated November 11, 1986 addressed to the Interstate Commerce Commission, with copies addressed to PaceSetter and to the plaintiff. Barbline,

Inc.'s attorney later wrote directly to the plaintiff by a letter dated December 23, 1986 to make on behalf of his client a "demand for payment under the bond of PaceSetter Transportation in the amount of $2,600.13 as a result of loads transported by Barbline, Inc. for PaceSetter Transportation ... on a property broker basis." [Plaintiff's exhibit no. 9.] The copies of documents submitted by this attorney with his two letters do not include a copy of any trip lease agreement; however, some of these documents show PaceSetter to be the carrier of the goods actually hauled by Barbline, Inc., suggesting that the two were parties to a trip lease, not a brokerage contract. Mr. Reedy of the plaintiff wrote to PaceSetter at P.O. Box 64, Winston–Salem, North Carolina, with a copy addressed to Mr. John Smelser, President, Criterion Investment Corporation, Box 23408, Knoxville, Tennessee, by a letter dated December 3, 1986, to request information concerning Barbline, Inc.'s claim. On January 7, 1987, Mr. Reedy wrote directly to Barbline, Inc.'s attorney, with copies to Mike Ritter, an attorney at law, at the P.O. Box 23408, Knoxville, Tennessee address, and to Mr. Smelser at PaceSetter at that address, advising Barbline, Inc.'s attorney that he was requesting information concerning the claim from Mr. Smelser, and that, if Barbline, Inc.'s attorney did not hear from Mr. Smelser, then the plaintiff would be back in touch with Barbline, Inc.'s attorney. [Plaintiff's exhibit no. 10.] Following this, on January 29, 1987, the plaintiff paid Barbline, Inc.'s claim in the amount of $2,600.13.

Circle City Transport, Inc. made a claim upon the plaintiff for payment under the broker's surety bond in the amount of $2,385.00 by its letter December 11, 1986. Included among the copies of documents submitted in support of the claim was a copy of a trip lease agreement between this claimant and PaceSetter. Mr. Reedy of the plaintiff corresponded with Circle City Transport, Inc. by a letter dated December 18, 1986, stating in part, "We are proceeding to contact our principal, who has now moved their office to Knoxville, Tennessee

at the address shown below. Their telephone number is 1–800–334–8319." A notation of a carbon copy to Mr. Smelser, Jr., President, without an address, appears at the foot of this letter. There is also a blind postscript from Mr. Reedy to Mr. Smelser, noting that the plaintiff had not received a response to its inquiry concerning the claim made by Barbline, Inc., and that, with respect to the claims of both Barbline, Inc. and Circle City Transport, Inc., Mr. Smelser should either arrange for the payment of the claims, or communicate with the claimants explaining why the claims would not be paid. This postscript concluded, "If we don't hear from you, we will have no alternative but to go ahead and issue our checks and pay these bills and advise the Interstate Commerce Commission and to look to you under the indemnity agreement for recovery." [Plaintiff's exhibit no. 13.] On January 29, 1987, the plaintiff paid Circle City Transport, Inc.'s claim in the amount of $2,385.00.

Judy M. Harris wrote directly to Mr. Reedy in a letter dated December 31, 1986 to make a claim on behalf of her husband, Darrel R. Harris, in the amount of $1,350.00. She explained in her letter that she and her husband were owner-operators who had leased their truck to AGS Enterprises, which had in turn trip-leased the Harris' truck to PaceSetter. Mrs. Harris stated in her letter, "I've contacted PaceSetter at Criterion Investments in Knoxville, TN. and spoke with a Mike Ritter, I understand he is their lawyer, on several occasions but I got no where with them as far as payment." [Plaintiff's exhibit no. 15.] Mr. Reedy responded to the Harris' claim in a January 7, 1987 letter addressed to Mrs. Harris, with copies addressed to Mr. Ritter and to Mr. Smelser at the P.O. Box 23408, Knoxville, Tennessee address. The plaintiff paid this claim on January 29, 1987.

National Transportation and Distribution Services, Inc. made a claim by a letter from its attorney dated January 21, 1987 to Mr. Reedy's attention, for $655.35. Included among the copies of documents provided to support the claim was a copy of a trip lease agreement between National Transporta-tion and Distribution Services, Inc. and PaceSetter. The plaintiff paid this claim on February 5, 1987. AGS Enterprises, Inc. made a claim for $949.38 similarly by corresponding with Mr. Reedy in a letter dated January 27, 1987. AGS Enterprises, Inc. did not submit to Mr. Reedy copies of any documents other than copies of its invoices addressed to PaceSetter. AGS Enterprises, Inc. stated in its letter, "We have made numerous telephone calls in attempting to effect collection to no avail and feel now that filing against PaceSetter's Surety Bond is the only alternative left open to us." [Plaintiff's exhibit no. 20.] The plaintiff paid this claim on February 5, 1987. Mr. Mike Ritter, Criterion's former in-house counsel, testified that Darrell R. Harris' and AGS Enterprises, Inc.'s claims arose from the same carriage of freight, so that the plaintiff paid the same claim twice to some extent in this case.

The Court has gone into some detail concerning the individuals and the addresses to which the plaintiff sent correspondence and copies of correspondence concerning the claims made under the broker's surety bond because of the possibility that some or all of the defendants did not receive sufficient notice of a claim before being called upon to reimburse the plaintiff for its payment of that claim. The parties stipulated that Criterion entered into an agreement on February 25, 1987 to move from its location on the Pellissippi Parkway in Knox County, Tennessee. Following Criterion's April, 1986 acquisition of PaceSetter, according to Mr. Ritter's testimony, PaceSetter's business records were kept at PaceSetter's place of business in Winston-Salem, North Carolina until around Thanksgiving, 1986, when they were brought to Criterion's Knoxville, Tennessee place of business. Mr. Reedy testified that he knew in December, 1986 that PaceSetter had moved to a Knoxville address, and that it had a toll-free telephone number there. He testified that, once he learned this, he addressed correspondence to both the Winston-Salem and the Knoxville addresses. Mr. Smelser testified that Criterion had working telephone lines at its Pellissippi

Parkway location at all times pertinent to this litigation. He also testified that he could not recall any written correspondence from himself to the plaintiff.

■ The Court will not excuse any defendant from liability on the ground that the plaintiff failed to send notice of a claim made under the broker's surety bond to a Knoxville address. When Criterion acquired PaceSetter, it was Criterion's responsibility to see that Criterion's management received PaceSetter's mail in time to respond to it. No matter what the plaintiff learned about Criterion's acquisition of PaceSetter, or when the plaintiff learned it, the plaintiff never assumed a duty to hunt by telephone or by letter for persons responsible for handling PaceSetter's creditors' claims.

Mr. Reedy, who appeared as a witness for the plaintiff, testified that he never received any response from any of the defendants to his correspondence and copies of correspondence concerning the claims made for payment under the broker's surety bond by Ken Bay Transportation Company, Barbline, Inc., or Circle City Transport, Inc. He testified that he did confer by telephone with Mr. Ritter, Criterion's in-house counsel, concerning the Harris claim, and that Mr. Ritter stated that Criterion's position was that this claim should be reduced to judgment before being paid. Mr. Reedy testified that he declined to follow this recommendation. He testified that he did not communicate with any of the defendants concerning the claims made by National Transportation and Distribution Services, Inc. and AGS Enterprises, Inc. because, by the time he received these claims, he had decided that it was futile to request instructions or information from the defendants concerning claims made for payments under bonds issued for Criterion or PaceSetter.

Mr. Reedy admitted upon cross-examination that this was his first case concerning a broker's surety bond in the trucking industry, and that he did not know the difference between a trip lease and a broker's contract for the carriage of freight. He recalled talking with attorney Ritter once

concerning one of the trip lessors' claims for payment, but he denied that Mr. Ritter told him that the coverage provided by a broker's surety bond did not extend to trip lessors. Mr. Reedy formed the opinion during his telephone conversation with Mr. Ritter that Mr. Ritter did not know much about surety bonds.

Attorney Ritter's testimony was in conflict on some points with Mr. Reedy's. Mr. Ritter testified that he has acquired experience in the trucking industry since 1977, when he worked as an owner/operator. He worked for a while in a motor carrier's trip lease department, then obtained his B.S. degree in transportation in 1983, and was admitted to the Tennessee bar in 1986. He first was employed by Criterion as in-house counsel on October 15, 1986, after Criterion's acquisition of PaceSetter. He worked for the defendant corporation until mid-February, 1987, when he left because of the declining financial condition of his employer.

Mr. Ritter recalled several telephone conversations with representatives of the plaintiff, including Mr. Reedy, concerning the trip lessors' claims for payment under the broker's surety bond. Mr. Ritter testified that he informed Mr. Reedy and at least one other representative of the plaintiff that payment of the trip lessors' claims under the broker's surety bond would be inappropriate, that the defendant corporation had not paid these claims because some of the conditions precedent to an obligation to pay them, such as the receipt of required documentation including, for example, drivers' logs, had not been met, and that Criterion desired an opportunity to contest the merits of at least some of these claims. Mr. Ritter testified that his telephone conversation with Mr. Reedy occurred before January 29, 1987, the first date upon which the plaintiff paid any of the claims made under the broker's surety bond. He testified that Mr. Reedy's response to his assertions concerning these claims was that he, Mr. Ritter, did not know what he was talking about with respect to surety bonds, and that the plaintiff was going to pay the claims. Mr. Ritter

admitted that all of his communications with the plaintiff and with parties seeking payment under Criterion's bonds were oral, because he did not have the time to draft correspondence for a financially besieged company.

Concerning the differences between Mr. Reedy's testimony and that of Mr. Ritter, these seem to have more to do with misunderstandings and differences of opinions concerning legal matters than with a lack of credibility on the part of either witness. Mr. Reedy understood Mr. Ritter to be contending that the claims should be allowed to go to judgment before payment, a position the plaintiff would not and did not have to accept. Mr. Ritter was correct about the limited scope of coverage provided by PaceSetter's statutory broker's surety bond, but neither he nor anyone else at Criterion appears to have done anything to communicate this to the claimants, who meanwhile were pressing the plaintiff for payment.

With respect to the claims made by Ken Bay Transportation Company, Circle City Transport, Inc., Darrel R. Harris, and National Transportation and Distribution Services, Inc., the material submitted to the plaintiff with these claims showed that they were for amounts asserted to be owed by PaceSetter under trip lease agreements. With respect to the claim made by AGS Enterprises, Inc., the plaintiff paid this claim on February 5 after receiving the claimant's letter dated January 27.

With respect to the Barbline, Inc. claim, the plaintiff was confronted with a letter from an attorney which stated in part, "[W]e are ... filing our demand for payment under the bond of PaceSetter ... as a result of loads transported by Barbline, Inc. for PaceSetter ... *on a property broker basis.*" [Plaintiff's exhibit no. 9 (emphasis added).]

The plaintiff's duty under the indemnity agreement which is the basis of this action was simply to determine in good faith whether any claim under any bond issued for Criterion or PaceSetter as a principal should be paid. Furthermore, the indemnity agreement made any such good faith

determination, at least from the indemnitors' viewpoint, "final and conclusive." The parties did not address the issue of the choice of law in this diversity action, but, since the indemnity agreement was executed by indemnitors in Tennessee to be performed here, the Court will apply Tennessee law. *Perry v. Lockert,* 414 F.Supp. 169, 170 (M.D.Tenn.1976). Provisions like those in this indemnity agreement are valid, enforceable, and not contrary to public policy in Tennessee. *National Surety Corporation v. Buckles,* 31 Tenn.App. 610, 219 S.W.2d 207 (1948), *cert. denied, id.* (Tenn.1949).

■ What is "good faith" depends, it is obvious, upon the facts and circumstances of each case. This standard requires less of an actor than the standard of reasonableness under the circumstances which is central to the law of negligence. *See, e.g.,* Tennessee Code Annotated § 47–1–201(19): "'Good faith' means honesty in fact in the conduct or transaction concerned." One other court, considering the meaning of this phrase in an indemnity agreement given to a surety company, has stated, "[N]either lack of diligence nor negligence is the equivalent of bad faith; and improper motive ... is an essential element of bad faith." *Engbrock v. Federal Insurance Company,* 370 F.2d 784, 787 (5th Cir.1967) (citations omitted) (applying Texas law). The Court finds that this is the proper standard to be applied here.

■ Applying this standard, the Court finds that the plaintiff paid the claims made under the broker's surety bond in good faith. The C urt is unable to find a bad motive in the plaintiff's payment of these claims, particularly in light of the fact that the plaintiff expended its own money in circumstances in which the financial conditions of its indemnitors made recovery of the money spent less than completely certain. While the plaintiff may have been less than diligent about checking the accuracy of Mr. Ritter's assertion concerning the limited scope of coverage provided by a broker's surety bond, the plaintiff could in good faith have determined that contesting these claims on the basis of

an opinion concerning a legal matter about which there might be a variety of opinions was not justified.

■ Even if *Central Towers Apartments, Inc. v. Martin,* 61 Tenn.App. 244, 453 S.W.2d 789 (1969), *cert. denied, id.* (Tenn.1970), were read to require the application of a reasonableness standard in addition to a finding of good faith, the Court's conclusion would not be different. In *Central Towers Apartments,* the contractual indemnity language covered any disbursements made by the surety in good faith. Even though the surety acknowledged that its principal, a contractor, had the financial ability to satisfy any judgment entered in an action brought against the two by a project owner, and even though the contractor had retained competent counsel to defend itself and its surety, the surety retained separate counsel, and sought to require the contractor to indemnify it against this expense. The Tennessee Court of Appeals distinguished *Transamerica Insurance Company v. Bloomfield,* 401 F.2d 357 (6th Cir.1968), and held

> that when the principal and his indemnified surety are sued by the obligee under the surety's bond, and the surety exercises its right under the indemnity agreement of the principal to hire its own separate counsel and incur litigation expense in defense of the action, the liability of the principal for the attorney fees and expenses thus incurred by the surety depends upon whether, under all the facts of the case, it was *reasonably necessary* for the surety to so act in its own defense, and whether the surety acted in good faith toward the principal.

*Central Towers Apartments, supra,* 453 S.W.2d at 799 (emphasis added). The Court of Appeals found that the surety had not acted reasonably and in good faith in retaining separate counsel in the circumstances presented.

*Central Towers Apartments* appears to apply only to a situation in which the principal is cooperating to keep the surety from exposure to risk on the bond. The action presently before this Court is more like the case in *Transamerica Insurance Compa-*

*ny v. Bloomfield, supra,* in that Criterion failed to deal with the claimants under the broker's surety bond after the plaintiff's repeated written requests to do so. However, even if the plaintiff's conduct in paying these claims must be measured against a reasonableness standard in addition to a good faith one, it is precisely this failure of Criterion to communicate with the broker's surety bond claimants which made the plaintiff's conduct reasonable, even if that conduct was based upon a misunderstanding of the scope of the particular bond liability in question. Therefore, the defendants are bound to reimburse the plaintiff for the total amount which the plaintiff paid to the broker's surety bond claimants.

■ The plaintiff's next claim for indemnity is for reimbursement of amounts which it paid to various State authorities under fuel tax bonds which it issued for PaceSetter. A fuel tax bond is a bond conditioned upon the payment by the principal, an operator of a motor vehicle engaged in the carriage of freight, of a tax measured by reference to the motor vehicle's consumption of fuel within the taxing authority's jurisdiction. *See, e.g.,* T.C.A. § 67–3–704. Mr. Reedy, who has some experience in dealing with fuel tax bonds, testified that he became concerned about Criterion's failure to communicate with the plaintiff because he knew that most if not all of the States require a motor freight carrier to file periodic fuel tax reports or returns whether or not it has operated in a particular State during the most recent period, as long as it has an open fuel tax account in that State. Fearful of escalating interest or penalty charges, Mr. Reedy asked at least one of the States which the plaintiff paid to calculate and to submit a fuel tax bill.

Mr. Reedy conceded upon cross-examination that he knew some of the taxing authorities were sending notices to PaceSetter at its Winston–Salem address after it had moved to Knoxville, and that the plaintiff did nothing to correct these errors. However, as is stated above, when Criterion acquired PaceSetter, it was the duty of Criterion to make certain that Criterion's

management would receive PaceSetter's mail. These unpaid fuel taxes, and the fact that PaceSetter might have obtained reductions of some of the assessments if it had acted timely, illustrate the importance of this duty. The Court finds that the defendants must reimburse the plaintiffs for the fuel taxes which the plaintiff paid.

■ The plaintiff's next claim for indemnity arises out of a litigation bond which it issued for PaceSetter, conditioned upon the satisfaction of any judgment, plus interest and costs, entered in favor of Rabon Woodard, d/b/a R & R Truck Agency in a civil action pending before the Morgan County, Alabama Circuit Court, for $8,782.04. The documentary evidence submitted concerning this matter [plaintiff's exhibits nos. 49–50] show that PaceSetter defaulted in its defense against Woodard's action, leading to the entry of a judgment upon the bond. By the time of the trial before this Court, the plaintiff had moved the Alabama court to vacate the order of forfeiture of the bond amount, which motion was still pending.

Under its indemnity agreement, the plaintiff is entitled to require the defendants to pay an amount sufficient to discharge any claim made under any bond on which the plaintiff is a surety. "Sureties are ordinarily entitled to specific performance of [such] collateral security clauses." *Safeco Insurance Company of America v. Schwab*, 739 F.2d 431, 433 (9th Cir.1984) (citations omitted). The Court finds that the plaintiff is entitled to recover the amount of this bond to hold as collateral against its ultimate liability to be adjudged in the litigation in Alabama, and to recover also its expenses incurred in defending itself in this matter. The same analysis applies to the plaintiff's final claim for indemnity against liability upon a $150,-000.00 litigation bond which it issued for Criterion as an obligation to Criterion's adversary, Interstate Contract Carrier Corporation, in litigation pending before the Knox County, Tennessee Chancery Court. [*See* plaintiff's exhibit no. 56.]

■ Immediately before the trial of this action, the plaintiff moved under Fed.R.

Civ.P. 16 and 37 for the imposition of sanctions against the defendants [doc. 52], on the ground that the trial had been continued from an earlier scheduled date due to the defendants' former counsel's decision to move for leave to withdraw after they decided to call as a witness Mr. Ritter, who had joined the defendants' former counsel's law firm. The Court heard testimony from attorney Vivian Lee Crandall, one of the defendants' former counsel, concerning the events prior to the earlier scheduled trial. Mr. Ritter was made available to be deposed by the plaintiff's counsel during the week before the earlier scheduled trial. The defendants wanted their former counsel to continue to represent them in this litigation, in spite of the fact that counsel had to call their own associate, Mr. Ritter, as a witness. On February 14, when the action was scheduled for trial, the Court heard the plaintiff's oral motion to exclude Mr. Ritter's testimony, and decided to allow the defendants' counsel to withdraw, and to continue the trial to allow the defendants to retain substitute counsel. In light of these circumstances, the Court finds the plaintiff's motion for sanctions [doc. 52] not well taken, and it is DENIED.

The submission at trial of a written, itemized list of the damages claimed by the plaintiff made the hearing of detailed testimony about this element of the plaintiff's claims unnecessary. On the authority of *Safeco Insurance Company of America v. Schwab, supra,* this Court, in its Order filed August 15, 1988 [doc. 26], ruled that the defendants must comply with the collateral security clause in their indemnity agreement. The defendants conceded at trial that none of them has transferred any assets to the plaintiff. For the reasons stated in these findings of fact and conclusions of law, the Court finds that an order enforcing this collateral security clause should be a part of the permanent relief awarded to the plaintiff.

■ The plaintiff also requested, in conjunction with the relief sought under the collateral security clause, an injunction prohibiting the defendants from transferring any assets to other persons before their

**844**

collateral obligations are satisfied. The Court will not award such injunctive relief, finding that the requisite showing of irreparable harm has not been made. The availability of means for the enforcement of judgments, such as the registration of judgments to create liens against judgment debtors' assets, provides the plaintiff in this case with adequate means by which to enforce the defendants' collateral security obligations.

The Court notes that, in an Order filed December 5, 1988 [doc. 30], it provided for the escrow with the Clerk of this Court of proceeds derived from a sale by one of more of the defendants of a certain asset or assets. If any such escrow account continues to exist, then the parties may provide for the disbursement of the amount held in escrow, to apply against the judgment entered in this action, by submitting an agreed proposed disbursement order in accordance with L.R. 17.3, E.D. Tenn.